# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMBROSIO ROBLEDO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 09-CV-674-PJC |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## ORDER AND OPINION

Claimant, Ambrosio Robledo, ("Robledo"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") to review his disallowance of disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Robledo appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly terminated Robledo's disability benefits. For the reasons discussed below, the Court REVERSES AND REMANDS the Commissioner's decision.

### Claimant's Background

At the time of the May 13, 2008 hearing before ALJ John W. Belcher, Robledo was 46 years old. (R. 410). Robledo was born in Mexico where he obtained a sixth grade education. (R. 410-11). Robledo has no vocational schooling. (R. 412). He has limited ability to communicate in English, reads "a little bit" in Spanish and English, cannot write in English, and has limited ability in mathematics. *Id.* Robledo's past work experience was as an apartment maintenance worker. (R.

147).

In 2002, Robledo sustained three gunshot wounds to the abdomen, leg, and head. (R. 414-15). He was found disabled as of July 20, 2002 due to the resulting impairments as well as vocational factors. (R. 18, 39, 414). However, on February 18, 2005, the Social Security Administration found him no longer disabled as of February 1, 2005 based on medical improvement. (R. 28, 34-49, 312).

## Medical History

On July 20, 2002, Robledo was transported via ambulance to Saint Francis Hospital for gunshot wounds to the back of his head, right thigh, and intra-abdominal injuries. (R. 211-39). Upon his arrival, Robledo was resuscitated and taken into the operating room for emergency exploratory surgery. *Id*. Surgery and diagnostic films revealed injuries to his small bowel, abdominal aorta, and kidney; an open skull fracture with presence of a small amount of blood in the posterior falx; and bullet fragments that hit his femur. (R. 214-21, 229, 233). Robledo underwent repair of his mesenteric arteries and abatement of his scalp wound. (R. 214-20). He tolerated surgical procedures well and was released on July 28, 2002 with care by a visiting nurse. (R. 219-20). Records of Robledo's home health care from July 29, 2002 through September 29, 2002 are unremarkable, other than noting Robledo's limitations in endurance. (R. 256-58).

On August 7, 2002, Robledo presented to Frank L. Mitchell, III, M.D. for follow-up for his injuries. (R. 248). Robledo reported he experienced muscle cramps in his left leg, centered primarily in his thigh. *Id.* Examination showed Robledo's wounds were healing well and staples were removed from his abdomen and scalp*. Id*. Dr. Mitchell recommended Robledo

continue with home health care and Lortab and Motrin P.M. and added Flexeril for Robledo's muscle spasms *Id.*

Christopher Sutterfield, M.D. ("Sutterfield") examined Robledo's injuries on August 16, 2002. (R. 246). Robledo complained of numbness and discomfort in his left thigh. *Id*. He also complained of weakness in his left lower extremity. *Id.* Robledo demonstrated ability to stand on both feet without favoring one side when using a walker. *Id.* Dr. Sutterfield observed that Robledo was unable to extend his left leg against resistance and had mild tenderness to palpation of his left thigh. *Id.* Overall, Dr. Sutterfield concluded that Robledo was doing "quite well," his multiple internal wounds were surgically repaired, and Robledo's problems with his lower extremities would improve with time. *Id.* Dr. Sutterfield recommended Robledo increase his activity level as he could tolerate. *Id*.

During Robledo's August 28, 2002 appointment with Dr. Sutterfield, he continued to complain of pain in his left leg, mainly in his thigh. (R. 244). Robledo reported that his walking had improved since starting exercise. *Id.* Dr. Sutterfield reported that Robledo's left thigh continued to be tender with palpation. *Id.* To rule out deep venous thrombosis, Dr. Sutterfield scheduled Robledo for left leg venus doppler ultrasound study, which proved negative. (R. 211-12, 244-45).

Robledo presented to Dr. Sutterfield on October 2, 2002 with chronic left leg pain, weakness and numbness. (R. 242). Dr. Sutterfield's examination of Robledo's back found tenderness in the LS region, with facet tenderness along Robledo's left L3 through L5 region. *Id.* He noted continued weakness, tingling, numbness and atrophy in Robledo's left lower extremity compared to his right extremity. *Id.* Dr. Sutterfield noted that recent CT scans "show

a broad-based bulge versus herniation with canal stenosis at L4-5" and "asymmetrical left foraminal narrowing at L4-5 with possible chronic fracture of the left superior L5 facet as well as asymmetrical left side bulge L5-S1 with spondylosis narrowing of the left L5-S1 foramen." *Id*. He concluded that stenosis and a bulge secondary to falling on his left side when he was shot were causing Robledo's chronic pain in his left leg and lower back. *Id*. Dr. Sutterfield referred Robledo for rehabilitative care and possible epidural injections. *Id*.

Venkatesh Movva, M.D., treated Robledo with lumbar epidural injections with selective nerve root blocks on October 29, 2002, and again on December 19, 2002. (R. 390). Dr. Movva reported Robledo experienced temporary relief from the injections and mild improvement of his leg weakness. *Id*. Dr. Movva additionally reported that Robledo's strength in his lower extremities improved due to physical therapy, but that Robledo was unable to continue therapy due to his finances.

Dr. Movva's treating records reflect Robledo underwent a EMG nerve conduction study of his left lower extremity on December 16, 2002. (R. 337, 390). Test results confirmed Robledo had left L5 radiculopathy. *Id.*

Robledo presented to Dr. Movva on January 15, 2004 with complaints of increased bilateral abdominal pain with prolonged walking. (R. 294). Robledo described the abdominal pain he experienced as if his abdomen was "pulling out." *Id*. He reported the pain ceased when he stopped walking. *Id.* He rated his pain at 6 out of 10. *Id.* On examination, Dr. Movva found Robledo to be in mild to moderate distress. *Id.* His examination showed that Robledo had slight protrusion of his abdominal wall from previous surgeries. *Id.* Dr. Movva concluded that Robledo's abdominal wall pain with prolonged walking was due to gravity and a loose abdominal wall. *Id.* He suggested Robledo wear a girdle to tighten the abdomen and prevent the scar tissue from pulling when he

walked. *Id.* Dr. Movva expressed to Robledo the importance of strengthening the muscles in his lower extremities. *Id.* Dr. Movva determined that Robledo gunshot wounds were stable, but he had a L5-S1disc bulge with left lower extremity radiculopathy of the L5 distribution and left lower extremity motor weakness. *Id.* Dr. Movva continued Robledo's medication regime. *Id.*

Dr. Movva saw Robledo on April 6, 2004 when Robledo reported slight improvement of his abdominal pain, but continued weakness in his left lower extremity. (R. 293). Robledo reported the level of his pain was 6 out of 10. *Id.* Dr. Movva discussed with Robledo the option of a selective nerve root block and lumbar epidural injection. *Id.*

During Robledo's June 8, 2004 appointment with Dr. Movva, Robledo again reported weakness in his left lower extremity and described his pain level as 7 out of 10. *(*R. 292). Robledo advised Dr. Movva that he walked on a regular basis, slept 6 hours daily and had an "okay" mood. *Id.* Dr. Movva determined that Robledo had paravertebral muscle spasms and provided him prescriptions for Flexeril, Thermacare heat wraps, and Lidoderm patch for his symptoms. *Id.* Dr. Movva's previous diagnoses of Robledo were unchanged. *Id.*

Robledo presented to Dr. Movva on August 24, 2004 with complaints of increased left lower extremity muscle spasms. (R. 290-91, 335-36). Robledo rated his pain score as 6 out of 10. *Id.* He reported his mood was "okay"and he was able to sleep 5 to 6 hours. *Id.* Dr. Movva noted that Robledo had pain in his abdominal wall with prolonged walking, a L5-S1 disc bulge with left lower extremity radiculopathy in the L5 distribution, weakness of his left lower extremity, and paravertebral muscle spasms. *Id.* Examination showed Robledo's wounds to be stable. *Id.* Dr. Movva taught Robledo exercise positions to stretch and strengthen his muscles; he additionally encouraged Robledo to walk and continue with his current regimen of medications. *Id.*

In November 2004, Robledo presented at OU Medical Clinic complaining of sharp pain in

upper right quadrant of his abdomen after eating or walking. (R. 297-303, 350-59). Robledo's chest x-ray revealed he had minimal perihilar/peribronchial cuffing consistent with hemoptysis. (R. 303). Haresh Ajmera, M.D., had Robledo undergo an abdomen and pelvis CT on November 19, 2004 and a stomach endoscopy on November 22, 2004. (R. 300-02, 355-57). Robledo's tests results were normal. *Id.*

Robledo presented to Dr. Ajmera on December 2004 with headaches and continued abdominal pain. (R. 358-59). Dr. Ajmera noted tenderness in the right upper quadrant of Robledo's abdomen which Dr. Ajmera determined was due to abdominal adhesions from the surgery to repair his gunshot wounds. *Id.* Notes of Robledo's January 6, 2005 appointment at OU Clinic reflect that he continued to complain of pain in his abdomen after he ate and thus was referred for an exploratory laprotomy. (R. 283, 358-59).

During Robledo's February 1, 2005 appointment with Dr. Movva, he reported ongoing pain down his left leg, lower back pain, and muscle weakness in the left extremity and characterized the level of his pain as 6 out of 10. (R. 333-34). He advised that he had received minimal relief from the epidural injection. *Id.* Dr. Movva continued Robledo's medications and discussed surgical options with Robledo. *Id.*

James A. Johnson, M.D., evaluated Robledo's abdominal pain on February 24, 2005. (R. 347-48). During examination, Robledo reported nausea and pain in the mid and right upper quadrant of his abdomen. *Id.* An ultrasound of Robledo's gallbladder was negative for disease. (R. 345-46). Dr. Johnson performed a laparoscopic surgical repair of Robledo's abdominal adhesions and ventral hernia on March 3, 2005. (R. 343-44). Post surgery appointments on March 17, 2005 and April 14, 2005 show Robledo had "no major complaints" and that his wound was healing. (R. 341-42).

Through Dr. Movva's referral, Richard D. Thomas, M.D., evaluated Robledo on March 16,

2005 for complaints of back pain, and muscle spasms, pain, weakness and numbness in his left lower extremity. (R. 322-25). On examination, Dr. Thomas observed Robledo exhibited a normal gait, had 30 degrees of forward leg flexion, and had full ability to extend his leg without pain. (R. 323). From his review of Robledo's MRI tests results of March 17, 2005, Dr. Thomas determined that Robledo had right paramedian disc herniation with impingement of the thecal sac and right L5 nerve root. (R. 322, 329-32). Results additionally revealed minimal L5-S1 disc degeneration and a broad base disc bulge. *Id.* Dr. Thomas recommended that Robledo consider a discectomy, or a one level fusion. (R. 322). Dr. Thomas believed either procedure would be beneficial in alleviating numbness and pain in his left lower extremity. *Id.* Robledo was prescribed Ultracet and Flexeril for pain. *Id.*

On August 8, 2005, Robledo was transported via ambulance to the Emergency Room of Hillcrest Medical Center after developing abdominal, chest, neck, shoulder, and back pain while walking in his neighborhood. (R. 371-76). Robledo also complained of nausea and shortness of breath. (R. 372, 374). Robledo exhibited mild-moderate, diffuse tenderness with palpation in the region of his chest and abdomen. (R. 372). Doctors concluded that Robledo's abdominal pain was secondary to intra-abdominal gas. (R. 373).

Robledo received therapy for his lower back and neck pain approximately every other day from January 10, 2008 through March 5, 2008, from Reynaldo Romero, D.C., ("Romero"). (R. 377-86). Per referral of Romero, Robledo underwent an MRI scan of his lumbar spine on January 22, 2008. (R. 378). Scan results revealed Robledo had degenerative disc disease; facet osteoarthritis at the lower two levels of his lumbar spine; and "moderate size central/right parasagittal disc protrusion at L4-5 causing severe right lateral recess stenosis, compression of the dural sac, bunching of the cauda equina, and suspected focal compression of the right L5 root as it exits the

dural sac." (R. 380-79). Per progress report of February 2, 2008, Robledo rated his original discomfort level at initial treatment as "10" on 0-10 numeric scale and his current discomfort as "5". (R. 377). Notes from Robledo's March 3, 2008 appointment state that Robledo did not feel good after his exercise therapy and that he did not like therapy. (R. 385).

Robledo underwent two examinations by consulting examiner, Angelo Dalessandro, D.O.. The first was on April 10, 2003. (R. 263-69). Robledo reported that he experienced abdominal and low back pain, numbness in his left leg and radiating pain from his lower back down his left leg, vertiginous episodes and difficulty sleeping. *Id*. Dr. Dalessandro observed that Robledo had a slightly slow gait, walked with a limp, and used a cane, although he could ambulate a few steps without it with some instability. *Id.* Dr. Dalessandro's physical examination found peristalsis in the area of Robledo's mid-abdominal scar, lumbodorsal tenderness on the left side with left straight leg raising positive at 75 degrees, atrophy of the left lower extremity, pain associated with the movements, a limited range of motion of 25 out of 90 degrees back flexion, 20 out of 25 degrees in his ability to bend left and right, and positive straight leg raising supine on the right. (R. 264, 269). He found that Robledo had normal range of joint motion, but weakness in heel and toe walking. *Id.* Dr. Dalessandro suggested that chronic lumbar strain secondary to disc disease with atrophy and weakness of his left leg should be ruled out. (R. 265).

In response to the agency's request for clarification as to whether Robledo could carry something while walking with the cane, Dr. Dalessandro reported on April 22, 2003 that although Robledo used a cane for support and for slight left leg weakness, he had not used any support when walked into his office and "could probably ambulate with a light load." (R. 270).

Dr. Dalessandro conducted a second evaluation of Robledo on February 7, 2005 as part of the agency's continuing disability review ("CDR"). (R. 305-11). Robledo identified the same

complaints. *Id*. Dr. Dalessandro reported that Robledo had normal gait to speed, stability and safety, could get off and on the examination table without problems, and could heel and toe walk. (R. 306). He found tenderness in the upper right quadrant of Robledo's abdomen, bilateral tenderness in his left lumbodorsal area, and when supine, Robledo had positive straight leg raising on the right to 60 degrees and on the left to 50 degrees. *Id.* Robledo's range of motion in his lumbosacral area was reported as 30 out of 90 degrees in flexion, 10 out of 25 in extension, and 20 out of 25 in left and right bending. (R. 308-09). Dr. Dalessandro found no evidence of muscle atrophy or paralysis. (R. 306). Dr. Dalessandro concluded Robledo had chronic lumbodorsal strain secondary to disc bulge at L5/S1. (R. 307).

An non-examining agency consultant conducted a residual functional capacity assessment ("RFC") on May 15, 2003. (R. 273-80). The consultant found Robledo had the ability to occasionally lift and/or carry 10 pounds. (R. 274). He also had ability to frequently lift and/or carry less than 10 pounds. *Id*. He could stand and/or walk less than 2 hours in a 8 hour workday with medically required hand-held assistive devices. *Id.*. Robledo could sit about 6 hours of the normal workday. *Id.* The consultant based his RFC on Robeldo's left leg atrophy and weakness, weak heel and toe walking, limited range of motion in lumbosacral region, tenderness in his left lumbodorsal, slow gait with left limp and ability to ambulate only a few steps without a cane. *Id*.

A non-examining agency consultant completed a follow-up RFC ("RFC") dated February 17, 2005. (R. 314-20). The consultant noted that Robledo demonstrated a normal gait, had no atrophy, had the ability to walk on heels and toes, his only neurological deficit was in straight leg raising, and though the CT scan indicated "left sided disc bulge at L5-S1 with spondylosis," he had not required surgery and was undergoing conservative treatment with exercise and muscle relaxants and non-narcotic pain medications. (R. 315). Based on this medical evidence, the consultant found

that Robledo could sit, stand, and walk for 6 hours in an 8-hour day, could frequently carry and lift 10 pounds, and occasionally lift or carry up to 20 pounds, and had unlimited ability to use leg controls and hand controls. *Id*.

On June 30, 2005, a reviewing agency medical consultant questioned the status of the April 2005 medical recommendation that Robledo undergo back surgery. (R. 360). A subsequent medical consultant's review form dated August 8, 2005 noted that Robledo had not had back surgery and did not intend to have the surgery. (R. 361).

A RFC dated August 8, 2005 evaluated Robledo's limitations as follows: he could stand and walk for 2 hours at a time in an 8-hour day, sit for a total of 6 hours at a time in an 8-hour day, occasionally carry up to 10 pounds, and frequently lift or carry 5 to 9 pounds. (R. 363). Further, although Robledo had unlimited use of his hands and feet for push and/or pull movements and could occasionally climb ramps or stairs, he could never climb a ladder, rope, or scaffolding. (R. 363-64). Robledo could occasionally balance, stoop, kneel, crouch, and crawl. *Id.*

Robledo testified about his physical impairments since his disability ceased in 2005, stating that he continued to suffer from leg, back, and stomach problems. (R 414-21). Robledo experienced pain like an "electric shock" radiating from his hip down his leg when he stood up, muscle cramps, and muscle tightness in his left leg. (R. 415-16). His leg gave out from under him if he stood over 15 minutes and his leg cramps left him unable to "do anything." *Id.* Robledo could walk short distances ("less than one block"), and although he generally didn't use a cane because he didn't want to "identify" with older relatives, he used a cane to walk for longer distances, when he had increased pain, and to help with his "side to side" balance problems. (R. 416-17, 420).

Robledo testified that he suffered from continual back pain. (R. 414-15). Sitting in a

chair was difficult for Robledo as it placed pressure on his lower back. (R. 417). Robledo tried to relieve back pressure by continually repositioning himself if he sat for over 10 minutes. (R. 417, 420). His back pain limited his ability to bend over to pull up his pants or socks. (R. 419-20). He had undergone pain injections that afforded him 3-6 months of relief, but stated that the shots were very expensive ("They were 2,000 and some a shot."). (R. 417). Robledo tried to alleviate his pain by taking Ultracet and Advil, applying hot patches and lying face down with ice packs on his back three times daily. (R. 418-19). Robledo stated he slept 6 hours a day with the use of Advil P.M. to help him sleep. (R. 419).

Side effects from two hernia operations caused Robledo to experience pain in his right side when he ate. (R. 415). The surgeries also left him unable to lift over 10 pounds. (R. 415-16). Also, in January 2008, Robledo sustained injury to his right arm in an auto accident that caused numbness and tingling in his right hand. (R. 421).

Robledo testified he did not do household chores because he "can't work." (R. 420-21). Robledo drives short distances to the store, but his children drive him on longer trips. (R. 417-18). He attends church services at least two times a month. (R. 421).

**Procedural History**

On December 6, 2002, Robledo was found disabled due to osteoarthrosis and allied disorders and late effects of musculoskeletal injuries from gunshot wounds and granted DIB beginning July 20, 2002. (R. 18, 26-27, 273-80). On February 18, 2005, the Commissioner completed a continuing disability review ("CDR") and found that Robeledo's disability ended as of February 1, 2005 due to medical improvement. (R. 18, 28, 34-49, 312-20). At Robledo's request, an administrative

hearing was held before ALJ John W. Belcher on May 13, 2008.[1] (R. 50-55, 400-427). Robledo received an unfavorable decision dated June 24, 2008. (R. 15-25). On May 13, 2009, the Social Security Appeals Council ("Council") denied Robledo's request for review of the ALJ's decision. (R. 9-13). Robledo now appeals the decision of the ALJ, asserting that the Commissioner erred in terminating his disability benefits under Social Security Act, 28 U.S.C. §§ 223(f).

### Social Security Law and Standard Of Review

In a termination review, a "medical improvement" standard applies and an eight-part sequential evaluation process is used. See 20 C.F.R. § 404.1594(f)(1) through (8).[2] The Commissioner bears the burden of showing medical improvement by establishing that the claimant's medical condition has improved, the improvement is related to the claimant's ability to work, and the claimant is currently able to engage in substantial gainful activity. *Glenn v. Shalala*, 21 F.3d 984, 987 (10th Cir. 1994). In deciding whether to terminate benefits, a claimant's impairments are

---

[1] A hearing was initially held on October 3, 2007 before ALJ David Engel who adjourned suggesting that Robledo get counsel; the ALJ also arranged for a translator to attend a later hearing on the merits. (R. 391-99).

[2] The first determination is whether the claimant is engaged in substantial gainful activity; if so, benefits will be terminated. 20 C.F.R. §404.1594(f)(1). If not, the second step is to determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments; if so, benefits will not be terminated. 20 C.F.R. §404.1594(f)(2). If not, in Step Three the Commissioner must determine whether there has been a medical improvement; if not, and if none of the exceptions to the standard apply, then benefits will not be terminated. 20 C.F.R. §404.1594(f)(3). If there has been medical improvement, Step Four requires an evaluation as to whether the improvement relates to the claimant's ability to work; if not, and if none of the exceptions to the standard apply, then benefits will not be terminated. 20 C.F.R. §404.1594(f)(4) and (5). If there has been no medical improvement or if any medical improvement is unrelated to the claimant's ability to work, and if none of the exceptions apply, benefits will be continued. *Id*. If there has been a medical improvement related to the claimant's ability to work and if none of the exceptions apply, then at Step Six, the Commissioner evaluates all of the claimant's impairments to determine if they are severe; if not, benefits will be terminated. 20 C.F.R. §404.1594(f)(6). If the claimant has a severe impairment or combination of impairments, at Step Seven, the Commissioner must determine whether the claimant can perform past relevant work; if so, benefits will be terminated. 20 C.F.R. §404.1594(f)(7). However, if the claimant cannot return to prior relevant work, a determination will be made at Step Eight as to whether he or she can perform other substantial gainful activity. 20 C.F.R. §404.1594(f)(8).

considered together. See 20 C.F.R. § 404.1594(d). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Brown*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id. (quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

**Decision of Administrative Law Judge**

The ALJ determined that Robledo had not engaged in any substantial gainful activity since he was found disabled on June 20, 2003, the "comparison point decision" ("CPD"). (R. 19-20). At the time of the CPD, Robledo was found to have suffered from "osteoarthrosis and allied disorders and late effects of musculoskeletal injuries-status post gunshot wound," resulting in the following limitations in his residual functional capacity ("RFC"):

> to occasionally lift and/or carry 10 pounds, frequently lift and/or carry less than 10 pounds, stand and/or walk less than 2 hours in an 8 hour workday with medically required hand-held assistive device necessary for ambulation, sit about 6 hours in an 8 hour workday, and occasionally climb ramps, stairs, ladder, ropes and scaffolds, balance, stoop, kneel, crouch and crawl.

(R. 20).

The ALJ found that as of February 1, 2005, Robledo had the following medically determinable impairments: "osteoarthrosis and allied disorders, late effects of musculoskeletal injuries- status post gunshot wound, degenerative disc disease of the lumbar spine, obesity, and hernia, which required laparoscopic repair, " and that none of these impairments or combination of impairments met or equaled a listing. (R. 20).

The ALJ determined that Robledo's medical condition had improved as of February 1, 2005 and that the improvement resulted in his current RFC to -

> lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, push and/or pull consistent with lifting and carrying limitations, stand and/ or walk 2 hours in an 8 hour workday, sit 6 hours in an 8 hour workday, with the ability to change positions at will. The claimant is able to occasionally climb stairs, balance, bend, stoop, kneel, crouch and crawl, but is unable to climb ladders, ropes or scaffolds. Additionally, the claimant is limited in his ability to speak English.

(R. 21-23). Given this RFC, the ALJ found that Robledo continued to be unable to perform his past relevant work as an apartment maintenance man. (R. 24). However, based on this RFC and the facts that Robledo was a younger individual, had a marginal education and could communicate in English, the ALJ found that there were significant numbers of unskilled, sedentary jobs in the national economy Robledo could perform, *e.g.*, semi-conductor assembly, optical goods assembly, and clerical mailer.[3] Accordingly, the ALJ found that Robledo's disability ended on February 1, 2005. (R. 25).

## Review

Robledo contends that the ALJ erred in finding (1) that he did not meet or equal the

---

[3] The ALJ stated that "the vocational expert testified the claimant's limited ability to speak English would not impact the position of clerical mailer." (R. 25). On remand, the ALJ should clarify whether this is the only occupation Robledo is able to perform given his limited English.

-14-

criteria of any of the listed impairments, specifically Listing §1.04A, after February 1, 2005 and (2) that he experienced medical improvement as of that date.

Robledo objects that the ALJ did not properly analyze whether Robledo's impairments met or equaled the level of severity of any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.04A as he did not discuss the evidence and explain why he concluded that no listing was met or equaled. Further, the ALJ's conclusory finding that no listing was met or equaled was not based on substantial evidence as the medical evidence demonstrates that Robledo met all of the criteria of Listing §1.04A.

The ALJ must discuss the evidence and explain why he found that a claimant's impairments do not satisfy the requirements of a listed impairment. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The ALJ did not do so here; he simply concluded: "Since February 1, 2005, the claimant did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526)." (R. 20). The ALJ did not specifically identify Listing §1.04A, although the medical evidence clearly implicated its consideration.

Such does not necessarily require reversal, however, if the ALJ's findings at other steps of the evaluative process provide an appropriate basis for upholding the ALJ's conclusion that a listing was not met or equaled. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 730-33 (10th Cir. 2005). The Commissioner argues that the "ALJ's findings that Plaintiff experienced medical improvement as of February 1, 2005, and that Plaintiff's medical improvement was related to the ability to work because it resulted in an increase in his residual functional capacity clearly reject any notion that Plaintiff satisfied the requirements of listing 1.04A." *Response*, p. 5 (Dkt. #20). Thus, the ALJ's failure to discuss the evidence and explain why no listing was met or equaled is

harmless error.

> Listing §1.04A provides:
>
> Disorder of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

The evidence cited by the ALJ in his discussion of medical improvement that is relevant to this listing consists of the following. He cited Dr. Dalessandro's February 7, 2005 report that Robledo's gait to speed, stability and safety was normal; he could get on and off the examination table without problem; "there was lumbodorsal tenderness present bilaterally with straight leg raising being positive on the right to 60 degrees and on the left to 50 degrees; and his impression was "chronic lumbodorsal strain, secondary to disc bulge at L5-S1." (R. 20). Further, the ALJ cited Dr. Thomas's surgical evaluation report on March 16, 2005 recommending a MRI of Robledo's spine "which subsequently revealed right paramedian disc herniation, impinging the thecal sac and the right L5 nerve root." (R. 21). Finally, the ALJ cited the records from Romero Health Center in January 2008 noting that Robledo had some improvement in his low back and left knee pain following treatment but that the MRI of his lumbar spine -

> revealed degenerative disc disease and face osteoarthritis at the lower two levels of the lumbar spine, as well as moderate size central/right parasagittal disc protrusion at L4-L5, with severe right lateral recess stenosis, compression of the dural sac, bunching of the cauda equine and suspected focal compression of the right L5 root.

(R. 21).

Contrary to the Commissioner's position, the Court finds that the evidence cited by the

ALJ supports more than rejects a finding that Robledo's impairments met or equaled Listing §1.04A. Although the ALJ noted the stability of Robledo's gait, his ability to get on and off the examination table without problem and improvement in his low back and left knee pain following treatment, he also cited medical evidence that Robledo had been diagnosed with a herniated nucleus pulposus resulting in the compression of a nerve root and had positive straight leg raising on the right at 60 degrees and on the left at 50 degrees. Further, the record evidences continued motor weakness in Robledo's left lower extremity (R. 333-34) and decreased range of motion in his lumbar spine (R. 305-309) which the ALJ failed to address. Thus, the Court cannot find harmless the ALJ's failure to discuss the evidence and explain why he found that Robledo's impairments do not satisfy the requirements Listing §1.04A. *Clifton*, 79 F.3d at 1009.

On remand, the ALJ should specifically address the evidence related to whether Robledo's impairments meets or equals a listing, specifically Listing §1.04A. In addition, in determining whether there has been any improvement in Robledo's impairments, the ALJ must show that improvement by "changes (improvement) in the symptoms, signs and/or laboratory findings" associated with Robledo's impairments. *See* 20 C.F.R. §404.1594. In so doing, the ALJ should explicitly contrast and compare the *objective* medical evidence pertaining to Robledo's impairments "present at the time of the most recent favorable medical decision" with his current medical condition (including any new impairments or limitations) in order to evaluate whether there has been improvement in his medical condition and whether that improvement has resulted in an increase in his RFC such that he can now engage in sustained and substantial gainful activity. *Glenn*, 21 F.3d at 987.

## Conclusion

For the reasons stated above, the Court REVERSES AND REMANDS the Commissioner's

decision.

Dated this 23rd day of March, 2011.

Paul J. Cleary
United States Magistrate Judge